Good morning. May it please the Court, my name is David Abney. I'm here representing the plaintiffs' appellants. Pavlov is my problem, and the problem for the case. It may or may not be unique, but it is highly unusual. Usually when you have a problem concerning an insurance contract, a clause that needs to be interpreted, and the insured says it means one thing, and the insurance company says it needs another, you go to the court, state court or federal court, and you go to the judge, because the judge decides these kinds of contract issues unless there's some sort of very strange underlying factual issue, which is not the case here. So one side says this is the plain language and here's how to interpret it, and the other side says this is the plain language and this is how to interpret it. But here, they come into court in Pavlov. Two years after Continental lost in the Southern District of Ohio on this very issue, and the district court judge says, well, there's no on-site requirement in this clause, period. And Continental, you lose. But in a non-class action, right? Non-class action. So that only bound Continental and the individual in the case? That one case. And then two years later, we have a decision from the Eastern District of Ohio, but it's not what you would expect, where the judge says, okay, one side's right, the other side's wrong. Instead, Continental comes in and says this is our historical way of interpreting the clause, and then the next thing you know, there's a settlement agreement. And the settlement agreement is not that this is how the clause is to be interpreted as a matter of law. It's simply that Continental is going to apply the clause, is going to enforce this clause, is going to handle the claims. So I understand it may not be a legal ruling that this is the way the clause is to be interpreted in future cases. But your client was, by virtue of the class action statutes, a party to that settlement, correct? Yes, Your Honor. Why? Doesn't it at least bind her? Or her family, obviously. To the extent that they could have filed a lawsuit. The only enforcement mechanism, and I think it's in Excerpt of Record, page 119, the only enforcement mechanism is to bring a breach of contract claim against Continental. Well, no, but it seems to me, doesn't this mean that your client can't claim that the contract provides for, if I call 7 by 5, you'll know what I mean, provides for more than 7 by 5? There was a contract dispute in this class action about what this insurance contract required. They said, one side of it had an argument that it required something that probably could never be achieved, 24 hours on site, continuous supervision. The other side said, no, no, it requires much less. They arrived at a settlement. Your client was part of that case. She had the opportunity to opt out. She didn't do so. And so with respect to your relationship with Continental, as opposed to the world's, doesn't that define what the contract means? No, it doesn't, because all that that settlement did was to say, this is how we are going to interpret and apply this in the future. This is how we, Continental, are going to do it. Right. But isn't the flip side of that settlement, and we, the plaintiffs, are not going to sue you for doing that? No. No. Because from Continental's perspective. Well, what would the settlement be, then? What's the purpose of the settlement, then? Your Honor. I mean, I know it's, like, really annoying, because I get these little cards in the I don't know, my husband just got a check for something like $2.53 from some AT&T class action or something. And, you know, I said, don't cash it. You know, that's the, but, you know, I mean, whoever can figure that out, and whoever really knows what they mean, I understand what you're saying. But the problem is, they do have some legal effect. Well, the. You're saying that it doesn't have any legal effect. It bound them, but not you? It has an effect, and it does bind them. But not you. And not us. Exactly right. ER-119, subpart, Roman numeral 5, subpart 4. This is a compromise. It is not intended to impact the legal construction of the effective policy language, or to alter or construe the extended requirements of any policy benefit. It is not evidence of such construction requirements. Doesn't that mean if somebody that's not part of the class wants to make a claim, these guys are saying, we're not conceding that this is what the contract requires. But as to all you class members who have not opted out, we've now arrived at an agreement between us as to what the contract requires. This is what makes Pavlov, and it may be unique. I know it's extremely unusual. The point of this whole thing is Pavlov only did one thing, and it says, Continental is now going to interpret this clause in a particular way. And if you are aggrieved, by the way, that they interpreted it, for instance, if they have interpreted it as they were supposed to in the Pavlov settlement, but they still don't give you your benefits, if you fit within this settlement parameters, you have a right to sue. But your reading, and I think I understand it, your reading is that I get at least what the settlement requires, but I can claim that I'm entitled to more. Exactly right, because that's what this says. I mean, and I've never seen anything like this. And if you flip the page, if you go to section on ER120, section V on that page, it says, Neither the settlement agreement nor any of the relief provided in this settlement agreement shall be interpreted to amend or alter the contractual terms of any policy. Tie that in with the clause that I just talked about. And what you've got here is that you, as the insured, seeking to enforce your interpretation, which is there is no on-site requirement, and there is no on-site requirement, then you have the right to do that, which is exactly what the Haldemans were trying to do in this lawsuit, but they were booted out because of the Pavlov settlement. I think the district court was as confused as I or anybody else would be when you look at this as a hard-nosed litigator or as an experienced trial judge and say, What the heck were they thinking of when they entered into this sort of arrangement? Now, it ended the litigation. And if you read the fine print— It does seem bizarre, but I'm having trouble getting around it legally. I mean, I understand exactly what you're saying, and when I read the briefs, I thought, That can't be right. But then as I research it and I look, give me the best argument how to legally get around it. Well, legally, you take the plain terms of disagreement and look at it, and it says— But I'm not—but we don't get to just— So I guess what you're just saying is you just do a de novo interpretation of what the language says. Exactly right, Your Honor, which is what this— And pretend that Pavlov never happened. No. I mean, just put that over here and don't ever look at it. Well, you can look at it, and after you've finally figured out what it says, then you can say it doesn't apply. And I would not say don't look at it, but if you look at it and try to interpret it as an experienced litigator, experienced district court judge, you would go, This is strange. And what it does is it leaves all these rights of interpretation even to the people within the class. It allows them to go into court, if they want to do that, and say, Look, this is what it says. There's no on-site requirement in this clause. And unfortunately, in our case, the district court didn't get into the meat and bones of what the settlement agreement actually said because deflected by this very strange arrangement reached in the Pavlov case. And the end result in Pavlov, if you read the fine print, is that there was a $2.325 million amount of money that was actually awarded. It went to the attorneys. It went to pay costs. And it went to provide incentives, incentive awards to the class representatives, and the class members got zipped. But it also subjected Continental to paying off claims that fell within the parameters of the settlement. Indeed, your client received, after that settlement, some payments because Continental now was no longer taking the 24-7 position. Yes, those 25 percent settlements. Right. But that's not right. It should have been 100 percent of this policy. It had been enforced for many, many years, and she only got to use it when she was up into her 80s, starting in 2012, and then she dies in 2015. She doesn't get a lot of benefit out of it, but still, it says what it says, and it should be interpreted the way it says. And nothing in the Pavlov settlement agreement is to the contrary, if you actually look at the nuts and bolts. Would the Continental be able to change their position in your litigation, if you're correct? So are they bound by the way they're going to interpret it? Well, they're bound. Okay. So if you're correct, if I understand your argument, they're just saying that's the way they're going to interpret the contract in the future. So you're saying that doesn't bind me because that is an incorrect interpretation of the language of the contract. Right. And the Pavlov settlement specifically says it's a compromise not intended to impact the legal construction of the effective policy language. So in your litigation, can they say there were not nurses on duty for seven days a week, five hours a day, therefore she's not entitled to any of the benefits? That's what they claimed. Well, I know that's what they claimed, but under your argument, are they able to take that position in the litigation, or are they bound by how they said they would interpret it in the Pavlov case? They are bound by what's in the Pavlov agreement. And the enforcement mechanism, you know, usually would see some sort of injunction, go forth and do this, that, and the other. There's no injunction in here. For purposes of your argument, we don't look at Pavlov. But when you go back to court, you get to claim Pavlov against them is what you're saying. That's what you're going to do. Yes, Your Honor. And that's what I keep saying. If you read the fine print — Does that strike you as not fair? No, not in the slightest. If you're not bound by it, but they are? No, not in the slightest, Your Honor. There's a huge disparity of bargaining power here. And for whatever reason, the parties reach this sort of very odd arrangement in Pavlov. But settlements then only bind one side and not the other side? You'd have to get into the minds of whoever came up with this language and whoever agreed to this settlement. It's a very strange agreement. But the words are crystal clear. I mean, in fact, in many ways it's clearer than the actual contract that we're trying to enforce. There's no quibbling about what it says. Not evidence of such construction requirements or intentions, et cetera, et cetera. Let's go back to Judge Callahan's question. Why is Continental bound and then your client, who would have been in the class and opted apparently not to opt out, why is Continental bound and your client not bound? Because Continental agreed to be bound in order to end the Pavlov case. But isn't the operation of a class action bind you when you don't opt out? Well, to the extent that we would have the right to enforce the terms of the Pavlov settlement, sure, we could do that. What did Continental get from the settlement? Not a whole lot, when you get right down to it. Under your interpretation, virtually nothing. It said that this, instead of our historic... It no longer had the possibility of lawsuits for those people who had 7 by 5 care, right? Because it had already agreed that we'd pay them off. Yeah, it ended the Pavlov case is what it did. And, of course, you can enter into very strange conditions to end litigation against you to make it go away. Well, it had only been the Pavlov case, but it's a class action. Yes, Your Honor. It ended the class action. Yes, it's a class action. And it gave some benefit to the class in the extent that they wouldn't be victims of what... They wouldn't be subjected to Continental's prior position. Yeah, which Continental calls its historical interpretation. They would no longer be victims of that. Instead, they're going to be victims of a different interpretation. Yes, Your Honor. Okay. Thank you very much. Good morning, Your Honors. I'm Brent Austin. I represent Continental Casualty. The settlement agreement in Pavlov is a lot less confusing and strange than counsel is making it out to be. It was an agreement to resolve a dispute about how to apply the nursing supervision requirement in this policy. Specifically, the dispute in Pavlov was Continental was taking the position that a nurse had to be supervising care directly on site, 24 hours a day, because of the 24-hour-a-day language in the policy. The plaintiffs did not agree. They filed suit. The suit went on for two years. It was expensive. There were depositions. Class certification was briefed. And then we reached a settlement. There is no settlement agreement where only one side is bound and the other side isn't. There's no contract where one side is bound and the other side isn't. Both parties to a contract are bound. And that's what happened here. In order to resolve on a going-forward basis the dispute about what is supervision of 24-hour nursing care, the parties agreed that a nurse has to be on site at the facility in question five hours a day, seven days a week. And that was the going-forward basis that bound both Continental and the members of the class, which included Mrs. Haldeman. That's not disputed. In exchange for that, Continental got a dismissal of the lawsuit. It also got a release. It got a release from class one, which were the people that had actually experienced a claim denial, and got some money to pay them back for the denial of their claim. And then for the class two people, which Mrs. Haldeman was a part of, they gave a release of any dispute about the on-site nursing consideration portion of the settlement agreement. And the settlement agreement is in the district court record? Yes, it is. And one thing I think we should be clear about is that this issue was only raised by plaintiff in her reply brief on summary judgment. In the opening briefing on summary judgment, the plaintiff was unequivocal that she believed she was a member of the Pavlov settlement and that the Pavlov settlement had eliminated the on-site nursing requirement and that she was entitled to benefits if she could prove that a nurse was on site at her facility five hours a day, seven days a week. And so the focus of the briefing at summary judgment until the reply brief. But let's assume the issue is appropriately before us. It's been fully briefed on appeal, has it not? It has, but I do want to emphasize that I think the position was waived at the trial court. And so I don't think it's properly before this Court, but it has been briefed. Did the trial court treat it as waived? I'm sorry? Did the trial court treat it as waived? The trial court said that it was waived, but then addressed it on the merits, too. So it did both. So what happens with the continental policies now? Say I have an elderly parent that's got Alzheimer's, and I have purchased it today. Can they challenge the way you're interpreting the policy? No. I mean, the policies, they don't sell these policies anymore. But say you had somebody that, you know somebody that has one of these policies, and they went into this facility. They would get coverage pursuant to the policy, the terms of the policy, and also as the claim standards in effect in PAPLA. So if you go into a facility and it has a nurse on site five hours a day, five days a week, you would get this 25 percent benefit that's in the PAPLA settlement. And that was offered to Mrs. Hultman. I think we're sort of, so what is this really about? Because this case isn't a lot of money. No. And I don't know how much each of you charge per hour, but I think that it's more than the amount that the whole case is worth. So is this case about, I believe the people that opted out aren't bound by it, correct? Correct. And you wouldn't dispute that? No. But it's about letting people that didn't opt out then have the same opportunity as those that didn't? Is it bigger than just this case, or what? The case, the nature of the case has kind of changed. When it started, what the case was about was a punitive damage claim. What we're talking about now is what I think amounts to a collateral attack on a class action settlement. When the language in the settlement agreement, I think, is very clear. I mean, the provision that makes this argument is explicit in the first sentence in saying that what this settlement agreement is creating is a new claim standard to address this disputed claim. And this new claim standard only applies to this disputed term. It doesn't apply to any other terms in the policy. So I found the language you were talking about. It's in your supplemental excerpts, page 97. It deals with settlement class 2, in which I take it Mrs. Haldeman was a part. And it then says how claims will be processed for that group. When a claimant qualifies for care, the following standard shall be used to determine, et cetera, et cetera. And then it goes on to say the claims handling changes discussed in this section shall not affect any other term of the policy. If that suggests to me that it does affect some term of the policy, what term of the policy does it affect? It affects the term that's discussed in the prior paragraphs of this section. This, by the way, is not the release provision in the agreement. Right, but it's the operative. It's what we're fighting for. The operative language. Yeah. It starts on supplemental excerpt 97 and it goes on to 99. And it identifies that the nursing supervision term in the policy is the one that's being addressed. And it's being addressed because the parties disagree about what it means. Right. And then it says, I don't think Mr. Abney disputes what the settlement requires. Correct. So it says this term of the policy shall be interpreted as requiring the following. So when you go to the policy and you look at the five requirements that a facility has to satisfy, the one that this is addressing is requirement number one, the supervision of a licensed nurse. And so what this agreement is addressing is under the supervision of a licensed nurse. Nobody disagrees that if a licensed nurse is actually providing care or is actually physically present, supervising care, that there is nursing supervision that's taking place. The dispute in Pavlov was what happens when a nurse isn't on site. Right. And I think I understand that at least. My question is this. It says this is, does this modify the policy in your view? No, and that's really. Because that's why I'm focusing on that any other provision shall not be affected. Isn't this provision affected? This provision, this settlement agreement was carefully drafted to be clear that it is not modifying policy language. Because this is a regulated industry and these are state approved forms. This is a compromise business going forward. And so the decision on how to do business going forward applies to this particular clause in the policy, if this policy is part of the settlement agreement. And it's important to note that a number of policies are identified in the settlement agreement as being affected by this. Did people opt out of the settlement? There were two classes. The class two settlement was a non-opt out class. So the opt outs would have been in class one, not in class two. But they had the opportunity to object and Mrs. Haldeman did not object. But the policies are identified in the settlement agreement. There are other policies with this same contract language that are not affected by the settlement agreement. Of the policy provision is put in there to make it clear that this settlement agreement and the compromise in the settlement agreement is not a concession about what the company's position would be on policies unaffected by the settlement agreement. So really the intention of the settlement agreement was to establish what it calls and this term is disputed. The parties don't agree. So we're going to fashion a standard that will define the state of play going forward. And that was a nurse physically on site five hours a day, seven days a week. And it obviously was subjected to a lot of litigation and briefing in the district court in Ohio. And nobody disagreed that the five hour a day, seven days a week rule was clear and was binding on continental, but it's also binding on the policyholders affected by the settlement agreement. And Mrs. Haldeman in fact has been paid, was paid from August 2013 until her death because she had seven by five care during that period. And continental's position had previously been that wasn't enough. Right? Continental's previous position was that seven by five wasn't enough as long as somebody wasn't on site. No, no. Continental's position was that her facility did not have a nurse there five hours a day, seven days a week. And so when the staffing changed after litigation was filed, a couple months after the complaint was filed, continental was notified that there now was a nurse there five hours a day, seven days a week and so she was put on claim. And she's been paid ever since and she has since passed away. So Mrs. Haldeman has derived the benefit of the Pavlov settlement and she's derived it for years. Well, she's derived the benefit in the sense that she didn't have to sue you to at least establish that minimum. Right? In other words, your position before that was different than the position in the settlement, was it not? The position, right. I mean, the benefit of Pavlov is that, yes, she didn't have to prove that the nurse was on site. Right. She didn't have to prove up the Pavlov standards. She was the beneficiary of it to that extent. But the position of people in the Pavlov class was that that wasn't what the policy actually required. Correct. And so when you say she was the beneficiary of that settlement, it just means she didn't have to sue to establish what the class settlement established. And the other part about this is that there's clarity in this agreement. I mean, it's an objective standard. Nobody is arguing anymore about what is enough supervision of 24-hour care and what isn't. Because it's an objective, it's a plainly objective standard. If a nurse is there five hours a day, seven days a week, then nobody is going to argue about it. And that was the intention of it, was to give clarity and finality to how to deal with this term, which was obviously hotly disputed. And we can find it, but I'm just interested in, there's a release signed by the class representative? Yes. On behalf of both classes? Settlement class two. Yeah, class one and class two. And what is the release? Does the release incorporate this language? It's a separate section of the settlement agreement. It's never been the subject of discussion in this case. But there is a release provision that deals with class two. It's in the settlement agreement, but not in the supplemental record that we provided? Correct. There are a number of other points that are raised in the Pellant's brief, but I think it's, the issues are pretty well teed up in our briefing, and it seems like the issue was the Pavlov settlement, but I'm happy to answer any questions about the deposition testimony or any of that sort of thing. We don't appear to have any additional questions. As far as one side being bound and the other not being bound, Continental got the benefit of this bargain in Pavlov. It got the case dismissed, and it did a slight modification in how it said it was going to do things in the future. There was no injunction entered against it to force it to do that. The only enforcement mechanism would be a breach of contract claim, which would be a pretty hard thing to do for most people. And so Continental got an awful lot out of this strange bargain that it hammered out in the Pavlov case. I'm sure it had a platoon of lawyers working on the language with the plaintiff's lawyers, and this is what they came up with. Part of our job as lawyers, and I submit to the court as jurist, is to enforce the plain language of these kinds of agreements. But that's why I keep going back to page 97 of the supplemental excerpts. It says the parties agree that this will be the way these claims are handled. And you got a claim, and you were a party. So why doesn't that end it? The parties are agreeing that Continental is going to change the way it's handling things, I believe, is what's going on here, Your Honor. In the brief excerpt of Record 45 at the trial court, quote, Continental agreed to amend how it would interpret this requirement as part of the settlement of a class action lawsuit in Pavlov. That's what Continental was doing. It was amending how it handled its own claims procedures. But it left open in the language in the settlement agreement, if people are saying this is not how I interpret the policy that you sold to me. By the way, the policy in this particular case has very strong language in it. It says you cannot change this policy on me. And in fact, if you want to change the policy, I have to agree to it. It has to be in writing on the policy signed by an officer of the insurance company, which never happened. We've got some very strong language in the Pavlov settlement agreement that confers the right to challenge the interpretation of that clause. And it says that the settlement is not intended to impact the legal construction of the affected policy language. And the only affected policy language. One other question about the settlement agreement. It says any action concerning the interpretation or construction of this agreement shall be brought in the district court that signed it. Of this agreement. We didn't bring an action to challenge it. No, I understand, but you're saying that the agreement, as we construe the agreement, it doesn't provide what the other side thinks it provides. Why shouldn't that action be brought in the district court in Ohio? We're not challenging the agreement itself. We're saying the agreement was intended to expand the way. You're asking us to construe it. We are construing the agreement in a very defensive sense. And merely saying it doesn't apply. Your time has expired unless there's additional questions by the court. Do either of you have any questions? I do.
judges: Callahan, Hurwitz, Molloy